UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-483-C**

**DEBORAH A. ALFRED,**                                                                    **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**MENTOR CORPORATION,**                                                 **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's motion for summary judgment (DE 27). The court, having reviewed the record and being otherwise advised, will grant the motion for summary judgment.

**I. STANDARD OF REVIEW**

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff.

*Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

The initial burden of showing the absence of a genuine issue of material fact is on the moving party. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*). Evidence that is "merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 249 (internal citations omitted). Furthermore, "the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only 'show – that is, point out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting *Celotex*, 477 U.S. at 325).

## II. BACKGROUND

The plaintiff in this matter claims that she suffered bodily injury, medical expenses, and other damages associated with the replacement of certain allegedly defective breast implants designed and produced by the defendant. More specifically, she claims that expert analysis of her implants "revealed clearly visible manufacturing defects, including, but not limited to, incorrectly molded valve

parts." (Compl. at ¶ 8.)  Therefore, the plaintiff argues that she is entitled to unspecified compensatory and punitive damages from the defendant based on theories of negligence, breach of implied warranty, strict liability, misrepresentation, and violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. § 367.110 *et seq.* ("KCPA").  In order to support her claims, the plaintiff sought to introduce allegedly expert testimony from Pierre Blais, Ph.D.; however, in a separate order, the court has granted the defendant's motion to exclude Dr. Blais's testimony.

In support of its motion for summary judgment, the defendant argues that the plaintiff's claims are pre-empted by the Medical Device Amendments, 21 U.S.C. § 360 *et seq.* ("MDA"), to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.*  While not all of the plaintiff's claims are thus pre-empted by the MDA, the court finds that many are, and the court also finds that the defendant has shown that it is entitled to judgment as a matter of law on those claims that are not pre-empted.[1]

### III. ANALYSIS

---

[1] In the alternative, the defendant argues that the plaintiff has failed to present admissible evidence of a product defect necessary to rebut the presumptions set forth in Ky. Rev. Stat. § 411.310.  According to § 411.310, "[i]n any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the design was prepared, and the product was manufactured."  Because the court finds that the defendant is entitled to summary judgment or pre-emption on all of the plaintiff's claims without the presumption of § 411.310, the court will not consider this argument at any greater length.

3

Because of its significance in this matter, the court will briefly review the background of pre-emption under the MDA. The MDA was enacted to provide for the safety and effectiveness of medical devices intended for human use, and it classifies medical devices based on the risk they pose to the public. Class III devices, such as the implants at issue in this case, pose the greatest risk; therefore, they are subject to a rigorous pre-market approval ("PMA") process.[2] According to the pre-emption clause of the MDA, 21 U.S.C. § 360k(a),

> [e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

As the Sixth Circuit recognized in *Kemp v. Medtronic, Inc.*, 231 F.3d 216, 221 (6th Cir. 2000), the issue of "whether the express preemption provision of the MDA, § 360k, preempts state law tort causes of action" has "sharply divided" the circuit courts.

The Supreme Court squarely considered whether the MDA "pre-empts a state common-law negligence action against the manufacturer of an allegedly defective medical device" in *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996). In *Lohr*, the Supreme Court held that Congress did not intend for the MDA "to deprive States of *any* role in protecting consumers from the dangers inherent in many

---

[2] There is no dispute that the implants at issue in this case are Class III devices.

4

medical devices." 518 U.S. at 489 (emphasis added). Therefore, the Court indicated that at least some state tort law actions can be maintained for violations of FDA regulations, but the precise scope of permissible suits remains unclear, and the "courts of appeals that have confronted issues of preemption arising under the MDA have struggled mightily with *Lohr*'s language in the effort to discern its holding." *Kemp*, 231 F.3d at 224. Part of the problem is attributable to the language and structure of the statute: "In determining the extent to which the MDA preempts state common law claims," the Supreme Court in *Lohr* recognized that "while § 360k(a) is an express preemption provision in the MDA, the scope of federal preemption under § 360k(a) is ambiguous." *Martin v. Telectronics Pacing Sys., Inc.*, 105 F.3d 1090, 1094 (6th Cir. 1997).

Those courts that have considered "the question of the preemptive effect of § 360k of the MDA have translated *Lohr*'s emphasis on the FDA regulations to focus on" three factors: first, whether "the FDA has established specific counterpart regulations or other specific federal requirements"; second, whether those specific federal regulations or requirements are "applicable to a particular device"; and third, whether those specific federal regulations or requirements "make state regulations different from, or in addition to, the specific FDA requirements." *Kemp*, 231 F.3d at 224-25; *see also Martin*, 105 F.3d at 1094 (quoting *Lohr*, and holding that for pre-emption to occur, the state requirement at issue "must be 'with respect to' a medical device and must be 'different from, or in

5

addition to' federal requirements"). Furthermore, for pre-emption to occur, the state requirement at issue "must relate to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device." *Martin*, 105 F.3d at 1094 (internal quotations omitted). "Finally, state regulations of general applicability are not preempted except where they have the effect of establishing a substantive requirement of a specific device." *Id.*

Accordingly, under the Sixth Circuit's interpretation of *Lohr*, before examining the plaintiff's substantive claims, this court must first determine, "as a threshold matter . . . whether the FDA has established specific federal requirements applicable to the" implants at issue in this case "through the PMA process." *Kemp*, 231 F.3d at 225. In *Kemp*, the Sixth Circuit held that when "the FDA has approved a medical device under a PMA Supplement and imposed conditions of approval, a specific federal requirement for purposes of preemption under the MDA is established." *Enlow v. St. Jude Med., Inc.*, 210 F. Supp. 2d 853, 858 (W.D. Ky. 2001) (citing *Kemp*, 231 F.3d at 228). Thus, under *Kemp*, the claims of any plaintiff which "seek[] to impose a state requirement that differs from, adds to, or impedes the implementation and enforcement of the design, manufacturing processes, or labeling contained" in a product's "original PMA or PMA Supplement [will be] preempted." *Enlow*, 210 F. Supp.2d at 858.

In 1999, the defendant submitted a PMA application for the implants at issue in this case, which included specific design, manufacturing, and labeling

specifications. (DE 27-6 at 3.) On May 10, 2000, the FDA issued a PMA order approving the safety and effectiveness of the implants at issue based on the design, manufacture, and labeling standards provided in the defendant's application. *Id.* Therefore, under the standard established in *Kemp* and *Enlow*, the FDA's PMA order approving the defendant's design, manufacture, and labeling standards established the threshold-specific federal requirements for the purposes of pre-emption under the MDA.

The plaintiff has not alleged that any of her relevant implants failed to meet the design, manufacture, or labeling specifications set forth in the defendant's FDA-approved PMA application, nor has she produced any evidence that would support such a claim. Nevertheless, the plaintiff argues that the defendant has failed to establish the existence of threshold-specific federal requirements in this case because because at least one of her relevant implants occurred *before* the FDA's PMA order. The plaintiff alleges that she underwent augmentation with the defendant's implants on three occasions: first, on February 23, 1995; second, on February 15, 1999; and third, on January 4, 2005. (Compl. at ¶¶ 5-7.) Because her allegedly defective 1999 implants were inserted *before* the FDA approved the defendant's PMA application in May 2000, the plaintiff claims that they "were not sold commercially as PMA approved implants"; and therefore, she argues, without citation, that "they were not subject to any specific requirements imposed by the

7

FDA."³  (DE 31 at 9.)  Accordingly, the plaintiff concludes that the threshold for pre-emption under the MDA has not been established with respect to her 1999 implants.

As the defendant points out, however, the court has previously considered and rejected a similar argument in *Enlow v. St. Judge Medical*.  The medical device at issue in *Enlow* was an allegedly defective mechanical heart valve, which was implanted immediately prior to a patient's death on December 14, 1999.  The FDA granted PMA approval for the *Enlow* valve in 1982, and after the valve was subsequently modified, the FDA approved a PMA Supplement application in 1995.  Still later, the defendant in *Enlow* learned of certain risks associated with the operation of the mechanical heart valve, and the defendant included an amended warning to physicians about these additional risks along with the valve.  The specific valve at issue in *Enlow* contained such a warning, which used language that was eventually approved and ultimately "mandated by the FDA."  210 F. Supp. 2d at 860.  But at the time the valve was inserted into the patient in *Enlow*, the FDA's approval of this warning language was still pending.

---

³ As the defendant points out, the 1995 implants cannot be at issue in this suit because the statute of limitations period has run, and the plaintiff does not contest this point.  Accordingly, the court will consider only the 1999 implants for the purposes of the plaintiff's argument.

The plaintiff also claims that her expert, presumably Dr. Blais, is prepared to explain that the FDA's PMA approval of the implants at issue "was conditional and not based strictly on safety and efficacy consideration[s]."  (DE 31 at 10.)  Because the court has excluded Dr. Blais's potential testimony in a separate order, and because the plaintiff offers no other proof for this assertion, the court will not further address this claim in this order.

Accordingly, the *Enlow* plaintiff argued that his state law failure-to-warn claim was not pre-empted by the MDA. The court rejected this argument, finding that the failure-to-warn claim *was* pre-empted because "[a]llowing a state failure to warn claim to arise from labeling that is pending FDA approval and preemption would impose state requirements that differ from federal requirements based on whether the cause of action arose before or after such approval was granted." *Id.* *Enlow*'s reasoning is even more persuasive in this case because the FDA granted the defendant's PMA application for the implants at issue on May 10, 2000, over five years before the plaintiff filed her complaint on August 23, 2005. Therefore, the court finds that the FDA's 2000 PMA order, which approved the safety and effectiveness of the implants at issue based on the design, manufacture, and labeling standards provided in the defendant's PMA application, has established the threshold-specific federal requirements for the purposes of pre-emption under the MDA.

Having established the existence of relevant and specific FDA requirements for the implants at issue in this case, this court must examine and analyze each of the plaintiff's claims separately, in order to determine whether any or all of them seek to impose a state requirement beyond the specifications approved by the FDA for the implants at issue in this case. *Enlow*, 210 F. Supp.2d at 858. Because the court's jurisdiction in this matter is invoked on the basis of diversity, the court must apply state substantive law to the plaintiff's claims and impose the "standards and

9

requirements that a Kentucky court would impose under similar circumstances." *Id.*

### A. The Plaintiff's Negligence Claim

According to the plaintiff, the defendant negligently designed and manufactured the implants at issue, *see* Compl. at ¶ 12; however, as discussed above, the plaintiff does not dispute that the specific implants at issue in this case were designed and manufactured in accordance with the specifications set forth in the defendant's PMA application. "The PMA process involves close scrutiny" of a medical device "by the FDA, and approval requires that the FDA conclude that it has received 'reasonable assurances of the device's safety and effectiveness' from the manufacturer." *Kemp*, 231 F.3d at 221 (quoting 21 U.S.C. § 360c(a)(1)(C)). In other words, "FDA approval" of the defendant's PMA application for the implants signifies that the implants' design "was found to be safe and effective[,]" and it also "constitute[s] an approval of specific manufacturing processes." *Enlow*, 210 F. Supp. 2d at 861. Thus, a finding under state law that the implants were negligently designed would impose a requirement that differs from the FDA-approved design; similarly, a finding under state law that the defendant negligently manufactured the implants despite the defendant's "adherence to the FDA approved requirements would differ from the FDA finding that its approved manufacturing requirements rendered the product safe." *Id.* (citing, inter alia, *Kemp*, 231 F.3d at 221, and *Mitchell*, 126 F.3d at 913). Therefore, the court finds that the plaintiff's negligent design and manufacturing claims are pre-empted.

### B.     The Plaintiff's Breach of Implied Warranty of Merchantability Claim

According to the plaintiff, the defendant breached an implied warranty of merchantability by improperly manufacturing, designing, and then selling the implants, *see* Compl. at ¶ 14-15; again, however, the plaintiff does not dispute that the specific implants at issue in this case were designed and manufactured in accordance with the specifications set forth in the defendant's PMA application. "'An implied warranty claim is based on the accepted standards of design and manufacture of the products[,]'" and where, as here, a product "'has gone through the PMA process, these criteria are set by the FDA.'" *Enlow*, 210 F. Supp. 2d at 862 (quoting *Mitchell v. Collagen Corp.*, 126 F.3d 902, 915 (7th Cir. 1997)). Thus, a state claim "'for breach of implied warranty that rested on allegations about standards other than those permitted by the FDA would necessarily interfere with the PMA process and, indeed, supplant it.'" *Id.*  Therefore, the court finds that the plaintiff's claim for breach of the implied warranty of merchantability is also pre-empted.

### C.     The Plaintiff's Strict Liability Claim

According to the plaintiff, the implants at issue in this case were unreasonably dangerous to the plaintiff because they suffered from defects in their "production, manufacture, assembly, installation and/or distribution[,]" and therefore, the defendant is strictly liable for the physical harm suffered by the plaintiff which was caused by the implants. (Compl. at ¶ 18, 20.) Under Kentucky

law, "a manufacturing defect claim . . . requires proof that the product did not meet the manufacturer's required specifications." *Enlow*, 210 F. Supp. 2d at 859 (citing, inter alia, *Ford Motor Co. v. McCamish*, 559 S.W.2d 507 (Ky. Ct. App. 1977)). Thus, a finding that the defendant in this case was strictly liable under a manufacturing defect theory based on Kentucky law would *not* impose a requirement that differs from the standards imposed by the FDA, and therefore, pre-emption is inappropriate.

At the same time, however, because the plaintiff has neither alleged nor provided any evidence that any of her relevant implants failed to meet the design, manufacture, or labeling specifications set forth in the defendant's FDA-approved PMA application, she has not provided any proof that the implants failed to meet the defendant's own required specifications. Rather, in her response to the defendant's motion for summary judgment, the plaintiff simply asserts that "Dr. Blais'[s] testimony [at trial] will demonstrate that the implants at issue were released into commerce in a condition [that was] unreasonably dangerous." (DE 31-1 at 12.) Even if the court had not excluded Dr. Blais's testimony in a separate order, this testimony would not have demonstrated that the implants did not meet the defendant's own required specifications. Accordingly, because there is no disputed issue of material fact with respect to the alleged manufacturing defects, the court finds that the defendant is entitled to summary judgment on the plaintiff's strict liability claims.

12

### D. The Plaintiff's Misrepresentation Claim

According to the plaintiff, the defendant "intentionally and/or negligently misrepresented the safety and efficacy of the[] breast implants with the intention of inducing the general public at large" to buy and use them, thereby breaching a duty "to communicate accurate information about the safety" of its products. (Compl. at ¶ 23-24.) The plaintiff also suggests that her purchase and use of the implants was influenced or caused by these misrepresentations, and therefore, she concludes that the defendant is liable for her "permanent and continuing" injuries. *Id.* at 25-26. In its motion for summary judgment, the defendant urges the court to apply the reasoning of *Burnett v. Pfizer*, 864 F. Supp. 25, 26 (E.D. Ky. 1994), which held that a fraud claim, along with negligence and strict liability claims, was pre-empted by the "broad preemption provision" of 21 U.S.C. § 360k(a). But *Burnett* predates both the Supreme Court's holding in *Lohr* and the Sixth Circuit's interpretation of *Lohr* in *Kemp*, and the broad pre-emption principles announced in *Burnett* may no longer be good law.

In the alternative, the defendant also argues that under *Kemp*, the plaintiff's misrepresentation claim should be pre-empted to the extent that it can be construed as a claim that the defendant made misrepresentations about its implants to the FDA. In *Kemp*, the Sixth Circuit considered a claim of "Fraudulent Misrepresentation" very similar to the plaintiff's claim in this case; however, by the time *Kemp* reached the Sixth Circuit, the *Kemp* plaintiff had refined this claim to an

13

allegation of "Fraud on the FDA." 231 F.3d at 232-33. After reviewing the conflicting opinions of other circuits, the Sixth Circuit held such a claim should be pre-empted because "to allow common-law suits for fraud on the FDA to go forward would permit juries to reach a different conclusion than the FDA did in approving the device in question, thereby imposing a different requirement than that required by the federal requirements." *Id.* at 235-36. This reasoning applies with equal force to the case at hand; therefore, insofar as the plaintiff's misrepresentation claim can be construed as a claim that the defendant made misrepresentations about its implants to the FDA, the court finds that it is pre-empted.

To the extent that the plaintiff's misrepresentation claim cannot be construed as a claim of "Fraud on the FDA," pre-emption may not be appropriate, but the defendant is nonetheless entitled to summary judgment on this claim. If the plaintiff's misrepresentation claim is not construed as a claim of fraud on the FDA, then it must be construed as a claim that the specific implants inserted into the plaintiff in some way fell short of their FDA-approved specifications, and that the defendant further deliberately or negligently misrepresented this fact to the public in general and to the plaintiff in particular. As discussed above, however, the plaintiff has not alleged that any of her relevant implants failed to meet the design, manufacture, or labeling specifications set forth in the defendant's FDA-approved PMA application, nor has she produced any evidence that would support such a

claim. Accordingly, because there can be no disputed issue of material fact with respect to the misrepresentation claim to the extent that this claim is not pre-empted, the court finds that the defendant is entitled to summary judgment on the plaintiff's misrepresentation claim to that extent.

### E.  The Plaintiff's KCPA Claim

According to the plaintiff, the defendant induced the plaintiff and her physicians to use "its implants through the use of false and/or misleading advertising, representations and statements[,]" thereby violating the KCPA. The remedial provisions of the KCPA "'require[] that 'privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act.'"[4] *Ky. Laborers Dist. Council v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 772-73 (W.D. Ky. 1998) (quoting *Skilcraft Sheetmetal v. Ky. Machinery, Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992)). In its motion for summary judgment, the defendant claims that privity between it and the plaintiff is lacking because the plaintiff did not purchase the implants at issue from the defendant, and this claim is supported by an affidavit submitted along with the defendant's motion. *See* DE 27-12. The plaintiff has offered no response. Thus, even when the evidence and all reasonable inferences from the evidence are viewed in favor of the plaintiff, there is no genuine

---

[4] In order to preserve the purposes of the KCPA, this strict requirement on privity for violations of the KCPA may be waived when a consumer is treated as a purchaser for all practical purposes, *see Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 793 (W.D. Ky. 2003), but the circumstances that supported a waiver of privity in *Stafford* are not present in the case at hand.

15

issue of fact for the jury to consider on the necessary element of privity, and therefore, the court finds that the defendant is entitled to summary judgment on the plaintiff's KCPA claim.  Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (DE 27) is **GRANTED**.

In a previous order, the court canceled the pretrial conference, which had been scheduled for March 8, 2007 (DE 42).  **IT IS FURTHER ORDERED** that all remaining scheduled deadlines and events in this case, including the trial date, are **CANCELED**.

Signed on  March 5, 2007

*Jennifer B. Coffman*

**Jennifer B. Coffman, Judge**
**United States District Court**